# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>**PATRIOT COAL CORPORATION**, *et al.*,<br><br>Debtors.[1] | **Chapter 11**<br>**Case No. 12-51502-659**<br>**(Jointly Administered)**<br><br>**Objection Deadline:**<br>**August 13, 2013 at 4:00 p.m.**<br>**(prevailing Central Time)**<br><br>**Hearing Date:**<br>**August 20, 2013 at 10:00 a.m.**<br>**(prevailing Central Time)**<br><br>**Hearing Location:**<br>**Courtroom 7 North**<br><br>Re: ECF Nos. 1575, 3848 |

## NOTICE AND DEBTORS' THIRD MOTION FOR AN ORDER EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE A PLAN OF REORGANIZATION AND SOLICIT VOTES THEREON

PLEASE TAKE NOTICE THAT this motion is scheduled for hearing on August 20, 2013, at 10:00 a.m. (prevailing Central Time), in Bankruptcy Courtroom Seventh Floor North, in the Thomas F. Eagleton U.S. Courthouse, 111 South Tenth Street, St. Louis, Missouri, 63102.

**WARNING: ANY RESPONSE OR OBJECTION TO THIS MOTION MUST BE FILED WITH THE COURT BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON AUGUST 13, 2013. A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED. FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE.**

---

[1] The Debtors are the entities listed on Schedule 1 attached hereto. The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

**DEBTORS' THIRD MOTION FOR AN ORDER EXTENDING
DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE
A PLAN OF REORGANIZATION AND SOLICIT VOTES THEREON**

Patriot Coal Corporation and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") respectfully represent:

**Relief Requested**

1.  Sections 1121(b) and (c) of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") provide for an initial period of 120 days after the date of the order for relief during which the debtor has the exclusive right to file a plan of reorganization. Section 1121(c) of the Bankruptcy Code also states that if the debtor files a plan of reorganization within the 120-day exclusivity period, competing plans may not be filed before 180 days after the date of the order for relief to allow the debtor to solicit and obtain acceptances.

2.  By this motion (the **"Motion"**), the Debtors seek an order (the "**Proposed Order**")[1] pursuant to section 1121(d) of the Bankruptcy Code, extending the Debtors' exclusive periods within which to file and solicit acceptances of a plan of reorganization (the "**Debtors' Exclusive Periods**") by 90 days, from September 2, 2013 and November 1, 2013, respectively, to December 1, 2013 and January 30, 2014, respectively. The Debtors seek these extensions to avoid the necessity of having to file a plan of reorganization prematurely and to ensure that their plan of reorganization best addresses the interests of the Debtors and their employees, creditors and estates.

---

[1] The Proposed Order granting the relief requested in this Motion will be provided to the Core Parties (as defined below). A copy of the Proposed Order will be made available at *www.patriotcaseinfo.com/orders.php*.

**Background and Jurisdiction**

3.  On July 9, 2012 (the "**Petition Date**"), each Debtor commenced with the SDNY Bankruptcy Court a voluntary chapter 11 case under the Bankruptcy Code. On December 19, 2012, the SDNY Bankruptcy Court entered an order transferring the Debtors' chapter 11 cases to this Court (the "**Transfer Order**") [ECF No. 1789].[2] The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the SDNY Bankruptcy Court's Joint Administration Order entered on July 10, 2012 [ECF No. 30].

4.  On November 15, 2012, the United States Bankruptcy Court for the Southern District of New York (the "**SDNY Bankruptcy Court**") entered an Order Extending the Debtors' Exclusive Periods Within Which to File a Plan of Reorganization and Solicit Votes Thereon [ECF No. 1575] (the "**First Extension Order**"). Pursuant to the First Extension Order, the Debtors' exclusive period within which to file a plan of reorganization was extended by 180 days, to May 5, 2013, and the Debtors' exclusive period within which to solicit acceptances of a plan of reorganization was extended to July 4, 2013. On April 26, 2013, this Court entered the Second Order Extending the Debtors' Exclusive Periods Within Which to File a Plan of Reorganization and Solicit Votes Thereon [ECF No. 3848] (the "**Second Extension Order**"). Pursuant to the Second Extension Order, the Debtors' exclusive period within which to file a plan was extended by an additional 120 days to September 2, 2013, and the Debtors' exclusive period within which to solicit acceptances of a plan of reorganization was extended to November

---

[2] Pursuant to the Transfer Order, all orders previously entered in these chapter 11 cases remain in full force and effect in accordance with their terms notwithstanding the transfer of venue.

2

1, 2013.  These extensions were granted without prejudice to the Debtors' right to seek additional extensions to such exclusive periods.

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### The Debtors' Restructuring Efforts

6.      The Debtors are coal mining companies headquartered in St. Louis, Missouri that mine and prepare metallurgical and thermal coal.  As of the Petition Date, the Debtors employed more than 4,000 people and operated twelve active mining complexes.

7.      These chapter 11 cases passed the one-year mark on July 9, 2013 and now stand at their most critical juncture.  The Debtors and the United Mine Workers of America (the "**UMWA**") are continuing to work toward a consensual resolution regarding modification to the Debtors' collective bargaining agreements and the funding of a trust for certain benefits for the Debtors' represented retirees.  Additionally, the Debtors are engaged in active discussions with Knighthead Capital Management, LLC and Aurelius Capital Management, LP (together, the "**Potential Backstop Parties**") on the potential terms of a plan of reorganization that would involve an investment of hundreds of millions of dollars into the Debtors' estates through a rights offering backstopped by entities managed by the Potential Backstop Parties.  The Debtors are also in discussions with certain other parties regarding exit financing proposals and potentially providing the Debtors the capital they need to emerge as a viable and competitive company.  Further, the Debtors have continued their diligent efforts to stabilize their businesses and reassure customers, suppliers and employees.  In the twelve months since the Petition Date, the Debtors have been working on multiple fronts to address their unsustainable cost structure

3

and prepare for a successful emergence from chapter 11. The Debtors and their advisors have dedicated significant time and resources to, among other things, (a) obtaining approval of an $802 million debtor-in-possession credit facility on appropriate terms, permitting the financing of the Debtors' operations during these chapter 11 cases (the "**DIP Financing**"); (b) obtaining authority from this Court to modify their collective bargaining agreements and retiree obligations pursuant to sections 1113 and 1114 of the Bankruptcy Code; (c) continuing to negotiate with the UMWA in order to reach a consensual resolution of the modification of the Debtors' labor and retiree obligations; (d) achieving a settlement with the non-union retiree committee regarding the modification and termination of certain non-union retiree benefits, and obtaining a court order authorizing the termination of the Debtors' supplemental 401(k) program; (e) commencing and prosecuting multiple adversary proceedings related to coal sale contracts, and negotiating and entering into settlements to resolve certain such proceedings, resulting in cost savings to the Debtors of tens of millions of dollars; (f) negotiating and entering into coal supply agreement stipulations; (g) rejecting over 265 executory contracts that were determined to not be beneficial to the Debtors' estates; (h) completing the Debtors' real property leases assumption/rejection process (except for certain matters pending before the Court), including obtaining court authority to assume hundreds of leases and reject several leases, negotiating with certain landlords to consensually extend the assumption/rejection decision deadline and/or consensually resolving objections to the assumption or rejection of certain leases and continuing to prosecute adversary proceedings and a contested matter relating to the few real property leases remaining to be assumed or rejected; (i) responding to various automatic stay issues (including with respect to significant environmental obligations); (j) addressing a multitude of creditor, supplier and customer inquiries; (k) successfully defeating a motion to appoint an official committee of

4

equityholders and a motion to appoint a chapter 11 trustee; (l) finalizing and filing the Debtors' schedules of assets and liabilities, income and expenditures and executory contracts and unexpired leases, and their statements of financial affairs; (m) establishing a bar date for the filing of claims and working to reconcile the more than 4,100 proofs of claim filed in these cases; (n) establishing procedures for settlements of, and objections to, proofs of claim; (o) objecting to over 890 claims; (p) negotiating claim settlement agreements with certain claimants (including with respect to significant environmental obligations), and entering into claim settlement agreements resolving over 1,000 disputed claims; (q) researching, analyzing and investigating potential claims against certain counterparties; and (r) evaluating the Debtors' compensation programs and developing, and obtaining Court approval of, an annual incentive program and critical employee retention program.

8.    Tangible progress has been made toward the Debtors' goal of successfully emerging from chapter 11 as a viable and competitive company.  However, as would be expected of companies as large as and with businesses as complex as the Debtors', there is more work to be done.  Certain critical near-term objectives must be achieved before a consensual plan of reorganization can be confirmed, which the Debtors hope will enjoy the support of their major creditor constituencies and will provide the financing needed to fund the Debtors' businesses for the benefit of their creditors, employees, retirees and other stakeholders.

9.    Currently, the Debtors are involved in ongoing negotiations with the Potential Backstop Parties regarding a backstopped rights offering that would provide liquidity for the Debtors' operations upon emergence as well as value for their creditors.[3]  The Debtors remain

---

[3] On June 18, 2013, the Debtors filed the Motion for an Order Authorizing and Approving the Payment of Fees and Reimbursement of Expenses of Potential Rights Offering Backstop Parties [ECF No. 4164], which was approved by the Court at a hearing on July 23, 2013.  [ECF No. 4365]

open to other financing proposals, and continue to work with certain other parties as well. Under any scenario, the Debtors intend to move expeditiously toward plan confirmation with the best available financing package. Moreover, the Debtors and the UMWA are continuing to work toward a consensual resolution regarding modifications to the Debtors' collective bargaining agreements (despite the fact that this Court has already fully authorized the relief requested by the Debtors pursuant to sections 1113 and 1114 of the Bankruptcy Code). As all parties in interest know, modifications to the Debtors' legacy labor liabilities represent the Debtors' most significant outstanding cost saving measure, and must be resolved before a viable plan of reorganization can be consummated. Further, concurrently with the filing of this Motion, the Debtors are seeking Court approval of a proposed amendment to their DIP Financing, which would, if consented to by the requisite lenders, provide the Debtors with specific relief as to certain financial covenants and potential defaults of the same so as to ensure the Debtors have continued access to the liquidity necessary to finalize such a plan within the current time lines required by the DIP Financing.[4]

10. Specifically, an extension of the Debtors' Exclusive Periods is required to enable the Debtors to:

    (a) deliver both a more efficient cost structure and future revenue growth so that the Debtors can compete effectively in the coal mining industry;

    (b) further implement specific restructuring initiatives;

    (c) address the Debtors' labor and retiree obligations;

---

[4] A more detailed description of the foregoing is set forth the *Debtors' Motion for Supplemental DIP Financing Order Authorizing, Pursuant to 11 U.S.C §§ 363 and 364, (i) Amendment to the DIP Financing, (ii) Engagement of the First Out DIP Agent in Connection Therewith, (iii) Payment of Fees Related Thereto, and (iv) Waiver of Bankruptcy Rule 6004(h) Stay* filed on July 30, 2103.

      (d)    complete their work with various potential liquidity providers to secure adequate liquidity upon emergence from chapter 11; and

      (e)    develop a plan of reorganization reflecting the initiatives set forth above and many others that are underway.

11.    The relief requested in this Motion is simply an extension of the time needed to accomplish the above goals, which are essential to the Debtors' survival. The Debtors expect to spend the requested extension moving as quickly as possible toward confirmation.

## Applicable Authority

12.    Pursuant to section 1121(d)(1) of the Bankruptcy Code, this Court may extend a debtor's exclusive periods upon a demonstration of cause:

> Subject to paragraph (2)[5], on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

11 U.S.C. § 1121(d)(1).

13.    The exclusive periods provided by Congress were incorporated into the Bankruptcy Code to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan without the deterioration and disruption of the debtor's business that might be caused by the filing of competing plans by non-debtor parties. Moreover, the Debtors are the only parties that owe fiduciary duties to the entire enterprise, and they are the only parties that are duty-bound to formulate a plan of reorganization that takes into account the interests of the estate and all its constituents. *See Smart World Techs., LLC v. Juno Online*

---

[5] Paragraph (2) states that the exclusive periods may not be extended beyond 18 and 20 months after the petition date.

7

*Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 174 (2d Cir. 2005) (Congress vested administration of the chapter 11 estate solely in the hands of the debtor-in-possession). To allow the Debtors' Exclusive Periods to lapse would defeat the very purpose of section 1121 of the Bankruptcy Code.

14. The principal goal of chapter 11 is the successful reorganization of debtors in order to increase the pool of assets available to creditors. *See NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 527 (1984); *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). The congressional intent woven throughout chapter 11 is that the principal means of a successful rehabilitation should be a considered and consensual plan. *See Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987). To promote the formulation of a considered and consensual plan, Congress gave the debtor the exclusive right to propose a plan of reorganization for a specified and extendable period. *See In re Ames Dep't Stores Inc.*, No. 90-11233, 1991 WL 259036, at *3 (S.D.N.Y. Nov. 25, 1991) ("The purpose of the Bankruptcy Code's exclusivity period is to allow the debtor flexibility to negotiate with its creditors.").

15. Whether "cause" exists to extend a debtor's exclusive periods to file and solicit acceptances of a plan of reorganization is a decision committed to the sound discretion of the bankruptcy court based upon the facts and circumstances of each particular case. *See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003); *In re Wisc. Barge Line, Inc.*, 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987); *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987). Congress intended to give the bankruptcy court maximum flexibility to make such determination. *In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (citation omitted); *see also* H.R. Rep. No. 95-595, at 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191. While the term "cause" is not defined by the statute, the legislative

8

history indicates that it is to be viewed flexibly "in order to allow the debtor to reach an agreement." *In re McLean Indus., Inc.*, 87 B.R. 830, 833 (Bankr. S.D.N.Y. 1987) (quoting H.R. Rep. No. 95-595, at 231 (1978)); *see also In re Borders Group, Inc.* 460 B.R. 818, 821–22 (Bankr. S.D.N.Y. 2011) ("The determination of cause under section 1121(d) is a fact-specific inquiry and the court has broad discretion in extending or terminating exclusivity.").

16. In determining whether cause exists to extend a debtor's exclusive periods, courts in this circuit have considered numerous factors, including:

(1) the large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure;

(2) the need of the official committee of unsecured creditors (the "**Creditors' Committee**") to negotiate with the debtor and the ability to prepare adequate information;

(3) the existence of good faith progress towards reorganization;

(4) the existence of an unresolved contingency;

(5) the fact that the debtor is paying bills as they become due;

(6) the length of previous extensions of exclusivity;

(7) breakdowns in plan negotiations, such that the continuation of the debtor's exclusivity period would result in the debtor having an unfair bargaining position over creditors;

(8) the debtor's failure to resolve fundamental reorganization matters essential to its survival; and

(9) the gross mismanagement of the debtor.

*See In re Hoffinger*, 292 B.R. at 643-44; *In re Acceptance Ins. Cos.,* No. 05-80059 (TJM), 2008 Bankr. LEXIS 2265, at *3-6 (Bankr. Neb. Aug. 20, 2008); *In re Interco. Inc.*, 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992); *cf. In re Adelphia Commc'ns Corp.,* 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Tripodi*, No. 04-30793, 2005 Bankr. LEXIS 1981, at *4 (Bankr. D. Conn. Feb. 18, 2005); *In re Express One Int'l, Inc.*, 194 B.R. 98 (Bankr. E.D. Tex. 1996).  Not all factors are relevant to every case, and courts have used a subset of the above factors to determine whether cause exists.  *See In re Hoffinger*, 292 B.R. at 644 ("As always, we emphasize that these are only factors, not all of which are relevant in every case. . . .  It is within the discretion of the bankruptcy court to decide which factors are relevant and give the appropriate weight to each.").  When determining whether cause exists, courts assess the totality of the circumstances.  *See In re McLean,* 87 B.R. at 834.

### Ample Cause Exists to Extend the Debtors' Exclusive Periods

17.     An analysis of the various factors noted above demonstrates that sufficient cause exists for the extension of the Debtors' Exclusive Periods by 90 days to December 1, 2013 and January 30, 2014.

    *a.*     *The Debtors' Cases Are Large and Complex*

18.     Courts have regularly extended the exclusive periods under section 1121(d) of the Bankruptcy Code in large, complex chapter 11 cases so as to afford the debtor time to stabilize its business and lay the groundwork for an effective plan of reorganization before beginning the formal plan formulation, negotiation, filing and solicitation process.  *See*, *e.g.*, *In re Wisc. Barge Line, Inc.*, 78 B.R. 946, 948 (Bankr. E.D. Mo. 1987) (stating that, if extensions of exclusivity were denied, "it would be virtually impossible for major corporations that are faced with extensive and time consuming litigation . . . to ever enjoy the exclusive benefits provided by 11

10

U.S.C. § 1121"); *In re Express One Int'l*, 194 B.R. at 100 (stating that the "traditional ground" for granting an exclusivity extension is "the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"); *In re Crescent Mfg. Co.*, 122 B.R. 979, 982 (Bankr. N.D. Ohio 1990) (stating that "cause" can include an "unusually large case") (citation omitted); *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization for a huge debtor with a complex financial structure are important factors which generally constitute cause for extending the exclusivity periods."); *see also* H.R. Rep No. 95-595, at 231–32 (1978); *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement."). Indeed, the size and complexity of the case, by itself, can support a determination that cause exists for an extension of exclusivity. *See In re Express One Int'l,*, 194 B.R. at 100 (noting that two previous extensions of exclusivity had been granted based on the size and complexity of the case alone); *In re Texaco*, 76 B.R. at 325–27 (cause existed to warrant extension of exclusivity based on the size and complexity of the case alone).

19.     More than 4,300 motions, notices, applications, petitions, orders and other pleadings have been filed in the twelve months since the Petition Date. Addressing these motions, negotiations and a multitude of creditor, supplier and customer issues have required extensive time and resources, and such efforts have been largely successful. However, the sheer number and scope of issues that have arisen during these cases demonstrate their size and complexity and the appropriateness of a further extension of the Debtors' Exclusive Periods.

      *b.*      *The Debtors Need More Time to Formulate a Plan of Reorganization and Prepare Adequate Information for Creditors and the Creditors' Committee*

20.      As set forth above in detail, there are two fundamental objectives—labor cost certainty and exit financing—that must be resolved before the Debtors can negotiate and prosecute a successful plan of reorganization and prepare the accompanying disclosure statement containing adequate information. Only after these matters are resolved will the Debtors reasonably be able to file a plan of reorganization and provide their creditors with adequate financial information such that creditors may cast an informed vote on such plan. *See In re Texaco, Inc.*, 75 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) (granting the debtors an exclusivity extension to, among other things, provide creditors and other parties with adequate financial information and sufficient time with which to reach an informed decision regarding a proposed plan). The Debtors are not yet in a position to accurately determine the optimal post-reorganization capital structure or file a disclosure statement containing adequate information. Accordingly, an extension of the Debtors' Exclusive Periods is warranted.

      *c.*      *The Debtors Have Made Good Faith Progress Toward Reorganization*

21.      The Debtors' demonstrated progress in resolving many issues that have arisen since the Petition Date also justifies the requested extension of the Debtors' Exclusive Periods. *See In re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996) (granting an extension of the debtor's exclusive periods because the debtor was making reasonable efforts to implement its extensive turnaround program). As discussed above, the Debtors have already taken numerous steps in these reorganization proceedings, including with respect to their coal supply arrangements, cost structure, labor and retiree liabilities, plan negotiations and exit financing initiatives.

22. Moreover, since the appointment of the Creditors' Committee, the Debtors and their advisors have engaged in numerous meetings and discussions with the Creditors' Committee's advisors as well as certain other constituencies. Discussions with the Creditors' Committee continue to be productive and amicable.

23. This progress is substantial given the size and complexity of these cases, which are relevant factors in determining whether a debtor has shown progress in attempting in good faith to formulate a viable plan of reorganization. *See Quality Inns Int'l, Inc. v. L.B.H. Assoc. Ltd. P'ship*, Nos. 89-2443 to 89-2445, 1990 WL 116761, at *2 (4th Cir. July 26, 1990), *cert denied*, 498 U.S. 1083 (1991). As discussed above, the Debtors' cases are large and complex. Taking into account the size and complexity of the Debtors' cases, there can be no doubt that the Debtors have made significant progress toward proposing a plan of reorganization.

    *d.    An Extension of the Debtors' Exclusive Periods Will Enable the Debtors to Resolve Certain Contingencies That Will Significantly Affect a Plan of Reorganization*

24. The existence of unresolved contingencies, the resolution of which will affect a debtor's ability to propose a confirmable plan of reorganization, supports an extension of the exclusive periods. *See In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987). As this Court and all parties in interest are aware, the Debtors are continuing to work towards the consensual modification of their labor and retiree liabilities and towards obtaining the financing necessary to fund a plan of reorganization. These two initiatives are critical to the Debtors' ability to successfully emerge from bankruptcy. Only after the Debtors address these issues in a manner that is in the best interests of all creditors can the Debtors pursue a confirmable plan of reorganization.

  *e.*  *The Debtors Have Been Paying Their Postpetition Debts When Due*

  25. The fact that a debtor has sufficient liquidity to pay its postpetition debts as they come due supports the granting of an extension of the Debtors' Exclusive Periods, because it suggests that such an extension will not jeopardize the rights of postpetition creditors and counterparties. The Debtors have been paying their undisputed postpetition debts as they come due and expect to continue to be able to do so.

  *f.*  *The Extension of Exclusivity Requested in this Motion is Reasonable in Light of the Length of the Debtors' Previous Extensions and the Extensions Granted in Other Similar Chapter 11 Cases*

  26. Bankruptcy courts have routinely granted additional requests for exclusivity extensions where debtors have received similar prior extensions than the Debtors received in the First Extension Order and Second Extension Order. *See, e.g., In re MN Airlines LLC dba Sun Country Airlines*, No. 08-35197 (RJK) (Bankr. D. Minn. Feb. 3, 2010) [ECF No. 403] (granting the Debtor an additional 60-day exclusivity extension after four previous extensions totaling 360 days); *In re Residential Capital, LLC*, No. 12-12020 (MG) (Bankr. S.D.N.Y. June 12, 2013) [ECF No. 3958] (granting the Debtors an additional 70-day exclusivity extension after five previous extensions totaling 274 days); *In re AMR Corp.*, No. 11-15463 (SHL) (Bankr. S.D.N.Y. March 27, 2013) [ECF No. 7284] (granting the Debtors an additional 44-day exclusivity extension after five previous extensions totaling 383 days).

  *g.*  *The Debtors Have Made Progress in Negotiating with Their Creditors*

  27. The Debtors have had significant, productive negotiations with a wide variety of creditors, including the Creditors' Committee, on various topics, which the Debtors believe will ultimately help lead to a consensual, successful plan of reorganization in these cases. For example, the Debtors have made significant progress towards the resolution of thousands of

claims as well as labor and retiree liabilities, and have made progress with respect to the potential funding of a plan of reorganization. Rather than requesting the extensions of the Debtors' Exclusive Periods as a negotiation tactic or as a means of maintaining leverage over any group of creditors whose interests may be harmed by such an extension, the Debtors are requesting the extensions to give themselves sufficient time to finalize a plan of reorganization that maximizes creditor recoveries. Allowing the Debtors' Exclusive Periods to terminate at this premature point would defeat one of the primary purposes of section 1121 of the Bankruptcy Code, which is the development of a consensual plan of reorganization. *See In re Mid-State Raceway, Inc.*, 323 B.R. 63, 68 (Bankr. N.D.N.Y. 2005) ("exclusivity is intended to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated") (citation omitted).

   h.  *The Debtors Diligently Have Made Progress to Resolve Fundamental Reorganization Matters*

28.  Since the Petition Date, the Debtors have worked diligently to resolve issues that are critical to their successful reorganizations. This has included substantial efforts to reduce the short-term and long-term costs of the Debtors' operations. Under the Court's guidance, the Debtors are continuing to seek the resolution of various matters that will enable the Debtors to successfully emerge from bankruptcy protection. As noted above, the Debtors are continuing to work towards a consensual resolution of the modification of their collective bargaining agreements and retiree obligations notwithstanding this Court's prior approval of the relief sought by the Debtors pursuant to sections 1113 and 1114 of the Bankruptcy Code. Further, the Debtors are involved in active discussions regarding the potential funding of a plan of

15

reorganization. This ongoing progress toward critical elements of these cases further supports an extension of the Debtors' Exclusive Periods.

      *i.*     *The Debtors Are Being Well Managed*

29. The Debtors have an executive management team consisting of individuals who collectively possess many decades of experience working in the coal industry. The Debtors' executive management team has worked diligently with their restructuring advisors to address the myriad and complex issues that have arisen throughout these chapter 11 cases. All of the members of the Debtors' executive management team have taken substantial reductions in personal compensation as part of their effort to restructure the Debtors' businesses to the benefit of all stakeholders and to develop a plan of reorganization that maximizes creditor recoveries. As noted in this Court's *Order Denying Appointment of a Chapter 11 Trustee,* "Debtors' shepherding of these extremely complicated and complex cases has been honest, competent and efficiently managed." *In re Patriot Coal Corp.*, No. 12-51502 (KSS) (Bankr. E.D.M.O. May 10, 2013) [ECF No. 3965].

30. In sum, the Debtors submit that ample cause exists under the Bankruptcy Code and the applicable case law for the requested extensions of the Debtors' Exclusive Periods.

## Notice

31. Consistent with the Order Establishing Certain Notice, Case Management and Administrative Procedures entered on March 22, 2013 [ECF No. 3361] (the "**Case Management Order**"), the Debtors will serve notice of this Motion on the Core Parties (as defined in the Case Management Order). All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this motion through the ECF system no later than the day after its filing with the Court. A copy of this motion and any

16

order approving it will also be made available on the Debtors' Case Information Website (located at *www.patriotcaseinfo.com*). A copy of the Proposed Order will be provided to the Core Parties, and will be available at *www.patriotcaseinfo.com/orders.php* (the "**Patriot Orders Website**"). The Proposed Order may be modified or withdrawn at any time without further notice. If any significant modifications are made to the Proposed Order, an amended Proposed Order will be made available on the Patriot Orders Website, and no further notice will be provided. In light of the relief requested, the Debtors submit that no further notice is necessary. Pursuant to paragraph 14 of the Case Management Order, if no objections are timely filed and served in accordance therewith, the relief requested herein may be entered without a hearing.

## No Previous Request

32.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the Debtors the relief requested herein and such other and further relief as the Court deems just and proper.

Dated: July 30, 2013
New York, New York

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

/s/ Michelle M. McGreal
Marshall S. Huebner
Damian S. Schaible
Brian M. Resnick
Michelle M. McGreal
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 607-7983

*Counsel to the Debtors
and Debtors in Possession*

-and-

BRYAN CAVE LLP
Lloyd A. Palans, #22650MO
Brian C. Walsh, #58091MO
Laura Uberti Hughes, #60732MO
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone: (314) 259-2000
Facsimile: (314) 259-2020

*Local Counsel to the Debtors
and Debtors in Possession*

## SCHEDULE 1
(Debtor Entities)

1. Affinity Mining Company
2. Apogee Coal Company, LLC
3. Appalachia Mine Services, LLC
4. Beaver Dam Coal Company, LLC
5. Big Eagle, LLC
6. Big Eagle Rail, LLC
7. Black Stallion Coal Company, LLC
8. Black Walnut Coal Company
9. Bluegrass Mine Services, LLC
10. Brook Trout Coal, LLC
11. Catenary Coal Company, LLC
12. Central States Coal Reserves of Kentucky, LLC
13. Charles Coal Company, LLC
14. Cleaton Coal Company
15. Coal Clean LLC
16. Coal Properties, LLC
17. Coal Reserve Holding Limited Liability Company No. 2
18. Colony Bay Coal Company
19. Cook Mountain Coal Company, LLC
20. Corydon Resources LLC
21. Coventry Mining Services, LLC
22. Coyote Coal Company LLC
23. Cub Branch Coal Company LLC
24. Dakota LLC
25. Day LLC
26. Dixon Mining Company, LLC
27. Dodge Hill Holding JV, LLC
28. Dodge Hill Mining Company, LLC
29. Dodge Hill of Kentucky, LLC
30. EACC Camps, Inc.
31. Eastern Associated Coal, LLC
32. Eastern Coal Company, LLC
33. Eastern Royalty, LLC
34. Emerald Processing, L.L.C.
35. Gateway Eagle Coal Company, LLC
36. Grand Eagle Mining, LLC
37. Heritage Coal Company LLC
38. Highland Mining Company, LLC
39. Hillside Mining Company
40. Hobet Mining, LLC
41. Indian Hill Company LLC
42. Infinity Coal Sales, LLC
43. Interior Holdings, LLC
44. IO Coal LLC
45. Jarrell's Branch Coal Company
46. Jupiter Holdings LLC
47. Kanawha Eagle Coal, LLC
48. Kanawha River Ventures I, LLC
49. Kanawha River Ventures II, LLC
50. Kanawha River Ventures III, LLC
51. KE Ventures, LLC
52. Little Creek LLC
53. Logan Fork Coal Company
54. Magnum Coal Company LLC
55. Magnum Coal Sales LLC
56. Martinka Coal Company, LLC
57. Midland Trail Energy LLC
58. Midwest Coal Resources II, LLC
59. Mountain View Coal Company, LLC
60. New Trout Coal Holdings II, LLC
61. Newtown Energy, Inc.
62. North Page Coal Corp.
63. Ohio County Coal Company, LLC
64. Panther LLC
65. Patriot Beaver Dam Holdings, LLC
66. Patriot Coal Company, L.P.
67. Patriot Coal Corporation
68. Patriot Coal Sales LLC
69. Patriot Coal Services LLC
70. Patriot Leasing Company LLC
71. Patriot Midwest Holdings, LLC
72. Patriot Reserve Holdings, LLC
73. Patriot Trading LLC
74. PCX Enterprises, Inc.
75. Pine Ridge Coal Company, LLC
76. Pond Creek Land Resources, LLC
77. Pond Fork Processing LLC
78. Remington Holdings LLC
79. Remington II LLC
80. Remington LLC
81. Rivers Edge Mining, Inc.
82. Robin Land Company, LLC
83. Sentry Mining, LLC
84. Snowberry Land Company
85. Speed Mining LLC
86. Sterling Smokeless Coal Company, LLC
87. TC Sales Company, LLC
88. The Presidents Energy Company LLC
89. Thunderhill Coal LLC
90. Trout Coal Holdings, LLC
91. Union County Coal Co., LLC
92. Viper LLC
93. Weatherby Processing LLC
94. Wildcat Energy LLC
95. Wildcat, LLC
96. Will Scarlet Properties LLC
97. Winchester LLC
98. Winifrede Dock Limited Liability Company
99. Yankeetown Dock, LLC