**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>**PATRIOT COAL CORPORATION,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 12-51502-659<br>(Jointly Administered)<br><br>Objection Deadline:<br>August 13, 2013 at 4:00 p.m.<br>(prevailing Central Time)<br><br>Hearing Date:<br>August 20, 2013 at 10:00 a.m.<br>(prevailing Central Time)<br><br>Hearing Location:<br>Courtroom 7 North<br><br>Re:  ECF No. 275 |

**NOTICE AND DEBTORS' MOTION FOR SUPPLEMENTAL
DIP FINANCING ORDER AUTHORIZING, PURSUANT
TO 11 U.S.C §§ 363 AND 364, (I) AMENDMENT TO THE DIP
FINANCING, (II) ENGAGEMENT OF THE FIRST OUT DIP AGENT IN
CONNECTION THEREWITH, (III) PAYMENT OF FEES RELATED
<u>THERETO, AND (IV) WAIVER OF BANKRUPTCY RULE 6004(h) STAY</u>**

　　　　PLEASE TAKE NOTICE THAT this motion is scheduled for hearing on August 20, 2013, at 10:00 a.m. (prevailing Central Time), in Bankruptcy Courtroom Seventh Floor North, in the Thomas F. Eagleton U.S. Courthouse, 111 South Tenth Street, St. Louis, Missouri, 63102.

　　　　**WARNING: ANY RESPONSE OR OBJECTION TO THIS MOTION MUST BE FILED WITH THE COURT BY 4:00 P.M. (PREVAILING CENTRAL TIME ) ON AUGUST 13, 2013.  A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED AND COUNSEL TO EACH OF THE AGENTS FOR THE DEBTORS' POSTPETITION LENDERS.  FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE.**

---

[1] The Debtors are the entities listed on Schedule 1 attached hereto.  The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

**DEBTORS' MOTION FOR SUPPLEMENTAL
DIP FINANCING ORDER AUTHORIZING, PURSUANT
TO 11 U.S.C §§ 363 AND 364, (I) AMENDMENT TO THE DIP
FINANCING, (II) ENGAGEMENT OF THE FIRST OUT DIP AGENT IN
CONNECTION THEREWITH, (III) PAYMENT OF FEES RELATED
THERETO, AND (IV) WAIVER OF BANKRUPTCY RULE 6004(h) STAY**

Patriot Coal Corporation and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") respectfully represent:

### Relief Requested

1. By this motion (the "**Motion**") and pursuant to §§ 363 and 364 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors seek entry of an order (the "**Proposed Supplemental DIP Financing Order**")[1] supplementing the *Final Order (i) Authorizing Debtors (a) to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) And 364(e), and (b) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363 and (ii) Granting Adequate Protection to Pre-Petition Secured Lenders Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364* [ECF No. 275] (the "**DIP Financing Order**") by: (a) authorizing the Debtors' entry into the Amendment (as defined below) and approving the terms thereof; (b) authorizing the Debtors' engagement of the First Out DIP Agent (as defined below) to arrange for consent by the requisite First Out DIP Lenders (as defined below) to the Amendment; (c) authorizing the Debtors' payment of the Amendment Fees (as defined below); and (d) waiving, to the extent applicable, the fourteen-day stay otherwise imposed by Federal Bankruptcy Rule 6004(h) on the immediate effectiveness of the Proposed Supplemental DIP Financing Order.

---

[1] The Proposed Supplemental DIP Financing Order granting the relief requested in this Motion will be provided to the Core Parties (as defined below). A copy of the Proposed Supplemental DIP Financing Order will be made available at *www.patriotcaseinfo.com/orders.php*.

**Background and Jurisdiction**

2.  On July 9, 2012 (the "**Petition Date**"), each Debtor commenced with the United States Bankruptcy Court for the Southern District of New York (the "**SDNY Bankruptcy Court**") a voluntary chapter 11 case under the Bankruptcy Code.  On December 19, 2012, the SDNY Bankruptcy Court entered an order transferring the Debtors' chapter 11 cases to this Court (the "**Transfer Order**") [ECF No. 1789].[2]  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  These chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the SDNY Bankruptcy Court's Joint Administration Order entered on July 10, 2012 [ECF No. 30].

3.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  The Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**The DIP Financing**

4.  On August 3, 2012, pursuant to the DIP Financing Order, the SDNY Bankruptcy Court authorized the Debtors to enter into the current $802,000,000 post-petition financing facility (the "**DIP Financing**") consisting of (i) new money (a) revolving credit loans in an aggregate amount not to exceed $125,000,000 and (b) term loans in an aggregate amount of $375,000,000 (collectively, the "**First Out Facility**"), each governed by the Superpriority Secured Debtor-in-Possession Credit Agreement (as amended or otherwise modified prior to the date hereof, the "**First Out DIP Credit Agreement**") and (ii) a roll up of obligations under the

---

[2] Pursuant to the Transfer Order, all orders previously entered in these chapter 11 cases remain in full force and effect in accordance with their terms notwithstanding the transfer of venue.

Debtors' prepetition credit agreement in respect of outstanding letters of credit, inclusive of any obligations as to reimbursement, renewal and extension of same issued in the aggregate amount of approximately $302,000,000 as of the Petition Date (the "**Second Out Facility**" and, with the First Out Facility, the "**DIP Facilities**") and governed by the Amended and Restated Superpriority Secured Debtor-in-Possession Credit Agreement (as amended or otherwise modified prior to the date hereof, the "**Second Out DIP Credit Agreement**" and, together with the First Out DIP Credit Agreement, the "**DIP Credit Agreements**").  Citibank, N.A. is the Administrative Agent (the "**First Out DIP Agent**") for the lenders and letter of credit issuers under the First Out DIP Credit Agreement (the "**First Out DIP Lenders**"), and Bank of America, N.A. is the Administrative Agent (the "**Second Out DIP Agent**" and together with the First Out DIP Agent, the "**DIP Agents**") for the lenders and letter of credit issuers under the Second Out DIP Credit Agreement (the "**Second Out DIP Lenders**" and together with the First Out DIP Lenders, the "**DIP Lenders**").[3]

5. Pursuant to, and subject to the exceptions set forth in, Section 12.01 of the First Out DIP Credit Agreement, an amendment or waiver of any provision thereof or any other related "Loan Document" (as defined therein) may be effected if signed in writing by the requisite First Out DIP Lenders (such First Out DIP Lenders constituting the "Required Lenders" as defined therein) and Patriot or the applicable "Loan Party" (as defined therein), as the case may be, and acknowledged by the First Out DIP Agent, and each such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it is given.

---

[3] The terms of the DIP Financing are set forth in the DIP Financing Order and the forms of the First Out DIP Credit Agreement and the Second Out DIP Credit Agreement filed in connection therewith.

6.      Further, in connection with the DIP Financing, the DIP Agents entered into a Security Agreement (as defined in the First Out DIP Credit Agreement and approved by the DIP Financing Order), which, among other things, sets forth the priority of rights and interests as between the First Out DIP Lenders and the Second Out DIP Lenders.  Pursuant to, and subject to the exceptions set forth in, Section 10.05(b) of the Security Agreement, the First Out DIP Agent may at any time and from time to time and without consent of or notice to any "Second Out Term Secured Party" or "Revolving Secured Party" (as such terms are defined in the Security Agreement), among other things, (x) waive any "Default" or "Event of Default" under (and as defined in) the Second Out DIP Credit Agreement, and (y) amend or modify any or all of the provisions set forth in the First Out DIP Credit Agreement that are expressly incorporated by reference into the Second Out DIP Credit Agreement, with the effect that such amendments, modifications, or substitutions shall be deemed incorporated by reference into the Second Out DIP Credit Agreement.

### The Amendment

7.      As the Court is aware, in the past year the Debtors have had to contend with continuous and sharp declines in the demand for, and price of, metallurgical coal, and the negative effects that such downward trends have had on the Debtors' internal financial forecasts.  Accordingly, because these downward trends in the coal markets have continued unabated, the Debtors currently believe there is a substantial likelihood that, if the Amendment is not approved, they may not comply with the current EBITDA Thresholds (defined below) beginning in the third quarter of 2013.

8.      Recognizing this risk of potential default, and in an effort to support the Debtors' plan of reorganization negotiation endeavors without any untimely disruptions, the Debtors and

the First Out DIP Agent have negotiated a proposed amendment to the First Out DIP Credit Agreement (the "**Amendment**" and together with all other documentation executed in connection therewith, the "**Amendment Documents**"), which, if consented to by the Required Lenders, will have the effect of, among other things, lowering the minimum consolidated EBIDTA financial covenant thresholds for periods following June 30, 2013 (the "**EBIDTA Thresholds**").[4] In connection therewith, the Debtors have engaged the First Out DIP Agent to arrange for, among other things, solicitation of consents to the Amendment by the First Out DIP Lenders. The First Out DIP Agent launched the Amendment on July 29, 2013. The Debtors are hopeful that the requisite First Out DIP Lenders consent to the Amendment by August 6, 2013, which is the consent deadline provided by the First Out DIP Agent to the First Out DIP Lenders.

9. By decreasing the EBITDA Thresholds, the Amendment, if consented to by the Required Lenders, will prevent the Debtors from potentially defaulting under the DIP Facilities and thereby allow the Debtors to continue to access the liquidity necessary to continue forward on a path to emergence from chapter 11 within the current timeline provided for under the DIP Credit Agreements, which timeline is not affected by the Amendment.

10. Under the Amendment, the terms of the First Out DIP Credit Agreement would remain substantially unchanged except as summarized in the chart below:[5]

---

[4] A copy of the Amendment has been provided to the Core Parties, will be made available at *www.patriotcaseinformation.com/exhibits.php* and will be made available for inspection at the hearing.

[5] The chart below is intended only as an illustrative summary. To the extent the description contained in this chart is inconsistent with the Amendment or the First Out DIP Credit Agreement, the applicable document controls.

5

|  | **Current First Out DIP Agreement** | **Proposed Amendment** |
|---|---|---|
| **Allowance of liens on ordinary course insurance pledges and deposits[6]** | None | Permitted |
| **Minimum Consolidated EBITDA (in millions)** | July 31, 2013  $110.0<br>August 31, 2013  $134.0<br>September 30, 2013  $148.0<br>October 31, 2013  $176.0<br>November 30, 2013  $190.0<br>December 31, 2013  $205.0 | July 31, 2013  $70.6<br>August 31, 2013  $68.6<br>September 30, 2013  $65.2<br>October 31, 2013  $83.8<br>November 30, 2013  $94.6<br>December 31, 2013  $101.3 |

Further, in light of the timing of the Amendment and the substantial likelihood of a default in the near-term, the Debtors have asked the Required Lenders to provide the Debtors with a limited waiver solely to the extent that any "Default" or "Event of Default" (as such terms are defined in the First Out DIP Credit Agreement) resulting from a breach of the existing EBITDA Thresholds set forth in Section 7.11 of the First Out DIP Credit Agreement (as incorporated by reference in the Second Out DIP Credit Agreement) or any failure to give notice thereof pursuant to Section 6.03(a) of the Credit Agreement (as incorporated by reference in the Second Out DIP Credit Agreement) (collectively, the "**Waived Defaults**") occurs prior to the execution of the Amendment or between the execution of the Amendment and occurrence of the Amendment's "Effective Date" (as defined therein). However, the waiver of the Waived Defaults shall be void *ab initio* if the Effective Date does not occur on or prior to August 22, 2013, at which time the First Out DIP Agent, the First Out DIP Lenders, and the Second Out Term Secured Parties shall

---

[6] Although the Debtors seek Court approval of the entire Amendment, the Debtors believe that the Amendment's provision allowing liens on insurance pledges and deposits is a non-material amendment and, pursuant to the paragraph 6(f)(ii) of the DIP Financing Order, would not require Court approval. However, given the totality of the matters involved in this Amendment, the Debtors seek approval of all terms, including the foregoing, without prejudice to their future right to enter into other non-material amendments to the DIP Financing without Court approval as provided for in the DIP Financing Order.

be entitled to exercise all of their rights, powers, and remedies as to the Waived Defaults as if such waivers had never been granted.  *See* Amendment, Section 2.

11.  Pursuant to the Second Out DIP Credit Agreement and the Security Agreement, the modifications and waivers effectuated pursuant to the Amendment summarized above will be deemed to be incorporated by reference into the Second Out DIP Credit Agreement.

12.  As is customary, the Amendment contains fee provisions, including the payment of fees to the First Out DIP Lenders that consent to the Amendment and fees payable to the First Out DIP Agent for arranging the Amendment (collectively, the "**Amendment Fees**"), in each case as a condition to the effectiveness of the Amendment (other than the waiver provisions thereof).  The terms surrounding the Amendment Fees payable to, and indemnification of, the First Out DIP Agent are contained in a separate engagement letter, which the Debtors and the First Out DIP Agent have agreed to keep strictly confidential.[7]

13.  The Debtors propose that the Amendment be deemed to constitute valid and binding obligations of the Debtors and their estates, enforceable against each Debtor party thereto in accordance with its respective terms.

14.  The Debtors further propose that the DIP Financing Order be deemed supplemented by any order approving this Motion, and that the DIP Financing Order will continue in full force and effect as supplemented.  The DIP Financing Order, as supplemented by the proposed order approving this Motion, would not treat secured creditors any differently than such secured creditors are treated under the DIP Financing Order.  Further, in connection with all obligations and indebtedness arising under the Amendment, the DIP Agents and the

---

[7] A copy of the engagement letter has been provided to the Court, counsel to the Second Out DIP Agent (on a strictly confidential, professional eyes' only basis) and counsel to the official committee of unsecured creditors (on a strictly confidential, professionals' eyes only basis) and the office of the U.S. Trustee.

7

DIP Lenders will maintain each and every right and remedy granted to the DIP Agents and the DIP Lenders under the DIP Financing Order, including, without limitation, their respective "Superpriority Claims" (as defined therein) and post-petition liens.

### Basis for Relief

15.   The SDNY Bankruptcy Court previously approved the DIP Financing as appropriate under, *inter alia*, sections 363(b) and 364 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate" so long as the debtor's decisions are based upon its sound business judgment.  *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).   "Under the 'business judgment' rule, the management of a corporation's affairs is placed in the hands of its board of directors and officers, and the Court should interfere with their decisions only if it is made clear that those decisions are, *inter alia*, clearly erroneous, made arbitrarily, are in breach of the officers' and directors' fiduciary duty to the corporation, are made on the basis of inadequate information or study, are made in bad faith, or are in violation of the Bankruptcy Code."  *Id.  See also In re Interco, Inc.,* 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 567 n. 16 (8th Cir. 1997) ("[w]here the [debtor's] request is not manifestly unreasonable or made in bad faith, the court should normally grant approval 'as long as the proposed action appears to enhance the debtor's estate.'") (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)); *In re Farmland Indus. Inc.*, 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003) (approving the rejection of employment agreements and noting that "[u]nder the business judgment standard, the question is whether the [proposed action] is in the Debtors' best economic interests, based on the Debtors' best business judgment in those circumstances." (citations omitted)); *see also In*

8

*re Channel One Comm.*, 117 B.R 493, 496 (Bankr. E.D. Mo. 1990) (holding that a judge determining a section 363(b) application must find from the evidence presented before him a good business reason to grant such application).

16.  The bankruptcy court in *Farmland Industries* approved an extensive amendment to the debtors' existing post-petition financing credit agreement as an exercise of sound and reasonable business judgment, finding that, generally, a debtor's business judgment should be upheld "so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest." *In re Farmland Indus.*, 294 B.R. at 884 (citing *In re Ames Dep't Stores, Inc.*, 115 B.R. 34 at 40 (Bankr. S.D.N.Y. 1990)).  There, the bankruptcy court pointed to the following factors in its decision:

(a)  the proposed financing is an exercise of sound and reasonable business judgment;

(b)  that the financing is in the best interests of the estate and its creditors;

(c)  that the credit transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the debtor's business;

(d)  that the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender; and

(e)  that the financing agreement was negotiated in good faith and at arm's length between the debtor, on the one hand, and the agents and the lenders, on the other hand.

Lastly, the *Farmland Industries* court reasoned that determination of "how high to raise" the bar of review when considering amendments to previously approved post-petition financing required a "case-by-case" analysis and that, in those instances where the proposed changes to an existing DIP financing are "relatively minor," a court may not have to extensively apply the aforementioned factors.  *Id.* at 880 (distinguishing minor amendments from those that "impose

new and potentially threatening requirements" on the debtor or are strenuously objected to by other creditors, which would require a court's review to be more akin to the type of review typically "applicable to an original request for approval of DIP financing.").

17. Here, the Debtors easily satisfy the standard under section 363(b) and *Farmland Industries*. The Debtors have exercised sound business judgment in determining that amending the First Out DIP Credit Agreement and (by incorporation) the Second Out DIP Credit Agreement to lower the EBITDA Thresholds is appropriate. In the exercise of their business judgment, the Debtors believe that the terms of the Amendment are reasonable and warranted for several reasons.

18. The Debtors are actively pursuing plan negotiations and potential exit financing opportunities. The Debtors' continued access to the DIP Financing is critical to the Debtors' ability to continue to operate and restructure their businesses and to emerge as a viable going concern. However, the Debtors' current internal financial forecasts have been affected based on the challenging coal market in which they operate, and the Debtors believe that there is a substantial likelihood that they may fail to comply with the current EBITDA Thresholds in the third quarter of 2013, and would be required to report such non-compliance, if it were to occur, as early as August 21, 2013. This would be an automatic event of default under both DIP Credit Agreements, triggering the DIP Lenders' rights to refuse further funding of the Debtors' operations, accelerate the Debtors' obligations to repay the loans in full and exercise other remedies against virtually all of the Debtors and their respective assets. Further, an event of default would erode the confidence and goodwill among the Debtors and their employees, vendors, shippers and other contractual partners. Such a result, at this advanced and critical stage of these cases, could prove to be disastrous to the Debtors' reorganization efforts.

Recognizing these potential consequences and that, upon an event of default, the Debtors would need to seek a waiver or modification to one or both of the DIP Credit Agreements, they have preemptively requested and negotiated a proposed modification that contains terms that the Debtors believe are reasonable and reflect the current financing market and serve the best interests of the Debtors' estates.

19.     Importantly, as indicated above, the Amendment preserves the structure and priorities in the DIP Financing Order and does not alter the previously approved liens and protections contained therein. Moreover, the Amendment has been negotiated in good faith, at arms' length and will not prejudice any party in interest. Indeed, without the guaranty of ongoing financing under the DIP Financing, the Debtors' entire efforts to reorganize—and the interests of all stakeholders—will be jeopardized.

20.     It is beyond dispute, therefore, that the Amendment, as proposed, is necessary and appropriate to allow the Debtors to continue accessing financing necessary to continue to operate and restructure their businesses as they pursue the completion of their reorganization strategy. Based on the foregoing, the Debtors submit that the Amendment is an appropriate exercise of the Debtors' business judgment under 363(b) and satisfies the *Farmland Industries* factors for an amendment to previously approved financing under section 364. Therefore, the Debtors respectfully request that the Court enter an order approving the Amendment.

## Request for Waiver of Bankruptcy Rule 6004(h) Stay

21.     Pursuant to Bankruptcy Rule 6004(h), unless the Court orders otherwise, any order authorizing the use, sale or lease of property pursuant to section 363 of the Bankruptcy Code is automatically stayed for fourteen days after entry of such order. FED. R. BANKR. P. 6004(h). Bankruptcy Rule 6004(h) is designed to provide sufficient time for an objecting party

11

to appeal before an order is implemented. *See* FED. R. BANKR. P. 6004(h) advisory committee's note. The Debtors seek a waiver of Bankruptcy Rule 6004(h) so that the Amendment, once consented to by the requisite First Out DIP Lenders and approved by this Court, can become effective immediately. Importantly, the conditional waiver specified in Section 2 of the Amendment will be void *ab initio* if the Effective Date does not occur on or prior to August 22, 2013, at which time the First Out DIP Agent, the First Out DIP Lenders, and the Second Out Term Secured Parties shall be entitled to exercise all of their rights, powers, and remedies as to the Waived Defaults as if the conditional waivers had never been granted. In order to avoid such an immediate default scenario, the Debtors therefore respectfully request that the Proposed Supplemental DIP Financing Order be effective immediately upon entry and the fourteen-day stay under Bankruptcy Rule 6004(h) be waived.

## Notice

18. Consistent with the Order Establishing Certain Notice, Case Management and Administrative Procedures entered on March 22, 2013 [ECF No. 3361] (the "**Case Management Order**"), the Debtors will serve notice of this Motion on the Core Parties (as defined in the Case Management Order). All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this Motion through the ECF system no later than the day after its filing with the Court. A copy of this Motion and any order approving it will also be made available on the Debtors' Case Information Website (located at *www.patriotcaseinfo.com*). A copy of the Proposed Supplemental DIP Financing Order will be provided to the Core Parties, and will be available at *www.patriotcaseinfo.com/orders.php* (the "**Patriot Orders Website**"). The Proposed Supplemental DIP Financing Order may be modified or withdrawn at any time without further

notice. If any significant modifications are made to the Proposed Supplemental DIP Financing Order or the Amendment, an amended Proposed Supplemental DIP Financing Order and/or Amendment will be made available on the Patriot Orders Website, and no further notice will be provided. In light of the relief requested, the Debtors submit that no further notice is necessary. Pursuant to paragraph 14 of the Case Management Order, if no objections are timely filed and served in accordance therewith, the relief requested herein may be entered without a hearing.

## **No Previous Request**

19.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the Debtors the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:   July 30, 2013
         New York, New York

Respectfully submitted,

DAVIS POLK & WARDWELL LLP

/s/ Michelle M. McGreal
Marshall S. Huebner
Damian S. Schaible
Brian M. Resnick
Michelle M. McGreal
450 Lexington Avenue
New York, New York 10017
Telephone:  (212) 450-4000
Facsimile:   (212) 607-7983

*Counsel to the Debtors
and Debtors in Possession*

-and-

BRYAN CAVE LLP
Lloyd A. Palans, #22650MO
Brian C. Walsh, #58091MO
Laura Uberti Hughes, #60732MO
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, Missouri 63102
Telephone:  (314) 259-2000
Facsimile:   (314) 259-2020

*Local Counsel to the Debtors
and Debtors in Possession*

## SCHEDULE 1
(Debtor Entities)

1. Affinity Mining Company
2. Apogee Coal Company, LLC
3. Appalachia Mine Services, LLC
4. Beaver Dam Coal Company, LLC
5. Big Eagle, LLC
6. Big Eagle Rail, LLC
7. Black Stallion Coal Company, LLC
8. Black Walnut Coal Company
9. Bluegrass Mine Services, LLC
10. Brook Trout Coal, LLC
11. Catenary Coal Company, LLC
12. Central States Coal Reserves of Kentucky, LLC
13. Charles Coal Company, LLC
14. Cleaton Coal Company
15. Coal Clean LLC
16. Coal Properties, LLC
17. Coal Reserve Holding Limited Liability Company No. 2
18. Colony Bay Coal Company
19. Cook Mountain Coal Company, LLC
20. Corydon Resources LLC
21. Coventry Mining Services, LLC
22. Coyote Coal Company LLC
23. Cub Branch Coal Company LLC
24. Dakota LLC
25. Day LLC
26. Dixon Mining Company, LLC
27. Dodge Hill Holding JV, LLC
28. Dodge Hill Mining Company, LLC
29. Dodge Hill of Kentucky, LLC
30. EACC Camps, Inc.
31. Eastern Associated Coal, LLC
32. Eastern Coal Company, LLC
33. Eastern Royalty, LLC
34. Emerald Processing, L.L.C.
35. Gateway Eagle Coal Company, LLC
36. Grand Eagle Mining, LLC
37. Heritage Coal Company LLC
38. Highland Mining Company, LLC
39. Hillside Mining Company
40. Hobet Mining, LLC
41. Indian Hill Company LLC
42. Infinity Coal Sales, LLC
43. Interior Holdings, LLC
44. IO Coal LLC
45. Jarrell's Branch Coal Company
46. Jupiter Holdings LLC
47. Kanawha Eagle Coal, LLC
48. Kanawha River Ventures I, LLC
49. Kanawha River Ventures II, LLC
50. Kanawha River Ventures III, LLC
51. KE Ventures, LLC
52. Little Creek LLC
53. Logan Fork Coal Company
54. Magnum Coal Company LLC
55. Magnum Coal Sales LLC
56. Martinka Coal Company, LLC
57. Midland Trail Energy LLC
58. Midwest Coal Resources II, LLC
59. Mountain View Coal Company, LLC
60. New Trout Coal Holdings II, LLC
61. Newtown Energy, Inc.
62. North Page Coal Corp.
63. Ohio County Coal Company, LLC
64. Panther LLC
65. Patriot Beaver Dam Holdings, LLC
66. Patriot Coal Company, L.P.
67. Patriot Coal Corporation
68. Patriot Coal Sales LLC
69. Patriot Coal Services LLC
70. Patriot Leasing Company LLC
71. Patriot Midwest Holdings, LLC
72. Patriot Reserve Holdings, LLC
73. Patriot Trading LLC
74. PCX Enterprises, Inc.
75. Pine Ridge Coal Company, LLC
76. Pond Creek Land Resources, LLC
77. Pond Fork Processing LLC
78. Remington Holdings LLC
79. Remington II LLC
80. Remington LLC
81. Rivers Edge Mining, Inc.
82. Robin Land Company, LLC
83. Sentry Mining, LLC
84. Snowberry Land Company
85. Speed Mining LLC
86. Sterling Smokeless Coal Company, LLC
87. TC Sales Company, LLC
88. The Presidents Energy Company LLC
89. Thunderhill Coal LLC
90. Trout Coal Holdings, LLC
91. Union County Coal Co., LLC
92. Viper LLC
93. Weatherby Processing LLC
94. Wildcat Energy LLC
95. Wildcat, LLC
96. Will Scarlet Properties LLC
97. Winchester LLC
98. Winifrede Dock Limited Liability Company
99. Yankeetown Dock, LLC

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**PATRIOT COAL CORPORATION,** *et al.*,<br><br>Debtors. | Chapter 11<br>Case No. 12-51502-659<br>(Jointly Administered) |

## SUMMARY OF EXHIBITS

The following exhibit (the "**Exhibit**") referenced in the Debtors' Motion for Supplemental DIP Financing Order Authorizing, Pursuant to 11 U.S.C. §§ 363 and 364, (I) Amendment to the DIP Financing, (II) Engagement of the First Out DIP Agent in Connection Therewith, (III) Payment of Fees Related Thereto, and (IV) Waiver of Bankruptcy Rule 6004(h) Stay (the "**Motion**") will be served on the Court, the office of the U.S. Trustee, counsel to the Second Out DIP Agent and counsel to the official committee of unsecured creditors.[1]  Copies of the Exhibit will be made available at *www.patriotcaseinformation.com/exhibits.php* and will be made available for inspection at the hearing.

Exhibit A:             A copy of Amendment No. 2 to the First Out DIP Credit Agreement.

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Motion.