UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In re<br><br>**PATRIOT COAL CORPORATION,** *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 12-51502-659<br>(Jointly Administered)<br><br>**Objection Deadline:**<br>September 18, 2013 at 4:00 p.m.<br>(prevailing Central Time)<br><br>**Proposed Hearing Date:**<br>September 24, 2013 at 10:00 a.m.<br>(prevailing Central Time) |

**NOTICE AND CERTAIN DEBTORS' MOTION FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 9019(a)
<u>APPROVING THE SETTLEMENT WITH THE ACE COMPANIES</u>**

PLEASE TAKE NOTICE that this motion is scheduled for hearing on September 24, 2013, at 10:00 a.m. (prevailing Central Time), in Bankruptcy Courtroom Seventh Floor North, in the Thomas F. Eagleton U.S. Courthouse, 111 South Tenth Street, St. Louis, Missouri 63102.

**WARNING: ANY RESPONSE OR OBJECTION TO THIS MOTION MUST BE FILED WITH THE COURT BY 4:00 P.M. (PREVAILING CENTRAL TIME) ON SEPTEMBER 18, 2013. A COPY MUST BE PROMPTLY SERVED UPON THE UNDERSIGNED. FAILURE TO FILE A TIMELY RESPONSE MAY RESULT IN THE COURT GRANTING THE RELIEF REQUESTED PRIOR TO THE HEARING DATE.**

---

[1] The Debtors are the entities listed on Schedule 1 attached hereto. The employer tax identification numbers and addresses for each of the Debtors are set forth in the Debtors' chapter 11 petitions.

**CERTAIN DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 363(b) AND 105(a) AND FED. R. BANKR. P. 9019(a) APPROVING SETTLEMENT WITH THE ACE COMPANIES**

Patriot Coal Corporation, Heritage Coal Company LLC and Pine Ridge Coal Company, LLC (collectively, the "**Plaintiff Debtors**"), hereby submit this motion (the "**Motion**"), pursuant to sections 363(b) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order[2] approving that certain settlement agreement (the "**Settlement**"), entered into on September 10, 2013, between the Plaintiff Debtors and ACE American Insurance Company, Pacific Employers Insurance Company, Century Indemnity Company (as successor to CCI Company, successor to Insurance Company of North America) and Indemnity Insurance Company (collectively, the "**ACE Companies**" and, together with the Plaintiff Debtors, the "**Parties**"), included herein as Exhibit A.

## Background and Jurisdiction

1.      On July 9, 2012 (the "**Petition Date**"), each Debtor commenced with the United States Bankruptcy Court for the Southern District of New York (the "**SDNY Bankruptcy Court**") a voluntary case under chapter 11 of the Bankruptcy Code.  On December 19, 2012, the SDNY Bankruptcy Court entered an order transferring these chapter 11 cases to this Court (the "**Transfer Order**") [ECF No. 1789].[3]  Patriot Coal Corporation and its subsidiaries that are debtors and debtors in possession in these proceedings (collectively, the "**Debtors**") are authorized to operate their businesses and

---

[2] A copy of the proposed order granting the relief requested in the Motion (the "**Proposed Order**") will be provided to the Core Parties (as defined below) and the ACE Companies.  A copy of the Proposed Order will be made available at *www.patriotcaseinfo.com/orders.php*.

[3] Pursuant to the Transfer Order, all orders previously entered in these chapter 11 cases remain in full force and effect in accordance with their terms notwithstanding the transfer of venue.

2

manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b) and the Joint Administration Order entered on July 10, 2012 [ECF No. 30].

2.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and may be heard and determined by the Bankruptcy Court.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Beginning in 2008, 362 plaintiffs (the "**Underlying Plaintiffs**") brought actions against the Plaintiff Debtors in the Circuit Court of Boone County, West Virginia (the "**West Virginia Circuit Court**"), each making substantially similar allegations and claims (collectively, the "**Boone County Well Water Litigation**") that the Plaintiff Debtors' mining operations near the Underlying Plaintiffs' residences in Seth and Prenter, Boone County, West Virginia resulted in (i) damage to the water supply near the Underlying Plaintiffs' residences and (ii) bodily harm to the Underlying Plaintiffs.  The West Virginia Circuit Court consolidated the Boone County Well Water Litigation cases for pretrial purposes under the caption *Bowles v. Massey Energy Company,* Civil Action No. 09-C-212.

4.      On July 10, 2009, the Plaintiff Debtors filed a third-party complaint against, among others, the ACE Companies, one of the Plaintiff Debtors' insurers seeking coverage for the Boone County Well Water Litigation (the "**Boone County Insurance Coverage Action**").  The Plaintiff Debtors asserted that the underlying claims in the Boone County Well Water Litigation were covered under the insurance policies that the

3

ACE Companies sold to the Plaintiff Debtors and that the ACE Companies were obligated, under their insurance policies, to (i) investigate fully, to defend the Plaintiff Debtors fully, and/or to pay in full the costs of defending the Plaintiff Debtors; and (ii) pay in full the Plaintiff Debtors' legal liability incurred, or to be incurred in the future. The Plaintiff Debtors further alleged that the ACE Companies breached their contractual and common law obligations to the Plaintiff Debtors by failing and refusing to fulfill these obligations.

5. The Boone County Well Water Litigation was settled as between the Underlying Plaintiffs and the Plaintiff Debtors, and such settlement was approved by the West Virginia Circuit Court on November 17, 2011.

6. On June 11, 2013, the Parties participated in a mediation session to explore a potential negotiated resolution of the Boone County Insurance Coverage Action. On that same date, the Parties agreed to the terms of the Settlement, which is intended to resolve all claims underlying the Boone County Insurance Coverage Action.

### Terms of the Settlement[4]

7. The key terms of the Settlement are summarized as follows:

    (a) The effectiveness of the Settlement is conditioned upon approval by this Court.

    (b) The ACE Companies will pay the Plaintiff Debtors $1,250,000.00 (the "**Settlement Payment**") in full and final settlement and satisfaction of any and all past, present and future claims and liability under the policies in connection with, arising out of, or relating in any way to the Boone County Insurance Coverage Action, and any and all past, present and future claims arising out of the Boone County Well Water Litigation.

---

[4] Any description contained in this Motion regarding the Parties' obligations under the Settlement is merely a summary and is qualified in its entirety by the actual terms and conditions of the Settlement. In the event any such description conflicts with or varies from the Settlement, the Settlement shall control.

4

  (c) Upon payment of the Settlement Payment by the ACE Companies, the Plaintiff Debtors will dismiss with prejudice all of their claims against the ACE Companies in the Boone County Insurance Coverage Action, including dismissal with prejudice and release of any bad faith, improper claims handling, and similar claims, and all claims for past, present and future defense costs and attorney's fees.

  (d) The ACE Companies agree to waive and dismiss any past, present and future claims for contribution, subrogation, set off and similar relief against the Plaintiff Debtors, the Plaintiff Debtors' other insurers, and any other parties that were in the Boone County Insurance Coverage Action or the Boone County Well Water Litigation.  The ACE Companies reserve the right to assert claims for contribution in response to any claim for contribution filed against them by any other insurer that was or is a party to the Boone County Insurance Coverage Action, including any rights of the ACE Companies against a reinsurer, retrocessionaire, or similar entity.

### Basis for Relief

**A. Entry into the Settlement Meets the Legal Standard Established Pursuant to Bankruptcy Rule 9019(a) and is in the Best Interests of the Plaintiff Debtors' Estates**

8. The Settlement is in the best interests of the Plaintiff Debtors and their stakeholders, and should be approved pursuant to Bankruptcy Rule 9019.  A debtor in possession's settlement is governed by Bankruptcy Rule 9019(a), which provides, in relevant part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  This Rule empowers Bankruptcy Courts to approve settlements "if they are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. *Tri-State Financial, LLC v. Lovald*, 525 F.3d 649, 654 (8th Cir. 2008) (citing *In re New*

5

*Concept Housing, Inc.*, 951 F.2d 932, 939 (8th Cir. 1991) ("A bankruptcy court's approval of a settlement will not be set aside unless there is plain error or abuse of discretion")); *see also* 10 *Collier on Bankruptcy* ¶ 9019.02 (15th ed. rev. 2009). The proposed settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." *Tri-State Financial*, 525 F.3d at 654 (citing *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)); *see also Drexel Burnham Lambert Grp.*, 134 B.R. at 505 (citing *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).

9. Relying on the guiding language of *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968), courts in this circuit have set forth the following factors regarding the reasonableness of settlements:

   A. the probability of success in the litigation;

   B. the difficulties associated with collection;

   C. the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

   D. the paramount interests of the creditors.

*Tri-State Financial*, 525 F.3d at 654, *Martin v. Cox (In re Martin)*, 212 B.R. 316, 319, (B.A.P. 8th Cir. 1997), *In re Apex Oil Co.*, 92 B.R. 847, 866 (Bankr. E.D. Mo. 1988); *see also Sec. Exch. Comm'n v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 960 F.2d 285, 292 (2d Cir. 1992). The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court. *In re New Concept Housing, Inc. v. Arl W. Poindexter (In re New Concept Housing, Inc.)*, 951 F.2d 932, 939 (8th Cir. 1991); *see also Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447 (6th Cir. 1963). It is the responsibility of the bankruptcy

6

court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness." *Tri-State Financial*, 525 F.3d at 654. Moreover, the form of consideration provided in the settlement is only one of the factors to be considered when determining whether a settlement is reasonable. *Id.*; *see also In re Tower Auto., Inc.*, 342 B.R. 158, 162 (Bankr. S.D.N.Y.) *aff'd*, 241 F.R.D. 162 (S.D.N.Y. 2006).

10. Based on these factors, the Settlement should be approved for several reasons. Pursuant to the Settlement, the Plaintiff Debtors will receive a payment of $1,250,000 for the benefit of the Plaintiff Debtors' estates while avoiding the risk and expense of further litigation in the Boone County Insurance Coverage Action. The Plaintiff Debtors have undertaken a diligent analysis of the disputed claims and have concluded that, given the likelihood of success of those claims and the costs of litigating them, the benefits of the Settlement outweigh its costs. Absent approval of the Settlement, the Parties would be required to proceed with the Boone County Insurance Coverage Action, which would require costly and time-consuming preparations, including discovery, briefing and hearing preparation. Although the Plaintiff Debtors believe they have strong arguments, the merits of the claims underlying the Boone County Insurance Coverage Action are disputed by the Parties and none of the Parties concedes its ability to succeed at trial. As the merits are disputed, the outcome cannot be predicted with any certainty. Accordingly, approval of the Settlement will allow the Plaintiff Debtors to avoid further expense, uncertainty and delay associated with the Boone County Insurance Coverage Action.

11. Moreover, the Settlement was negotiated through mediation and is the result of good faith, arms' length bargaining among the Parties without collusion or

7

fraud. All of the Parties were represented by experienced counsel, and the Settlement is the product of their judgment and negotiation. Among other things, the Settlement (i) provides for the full and final resolution of the Boone County Insurance Coverage Action and (iii) represents a fair and equitable resolution for the Plaintiff Debtors and their estates in a timely and efficient manner. All of the Parties are in favor of the Settlement, which, given the uncertainty of the outcome of the Boone County Insurance Coverage Action, reflects concessions by all of the Parties. Thus, the Settlement is a fair and equitable compromise for all of the Parties.

12. The Settlement unequivocally satisfies all of the requirements of Bankruptcy Rule 9019 and the applicable authority in this Circuit. The Settlement falls well within the "range of reasonableness," and is in the best interests of the Plaintiff Debtors and their estates, thus warranting approval. The substantial benefits to the Plaintiff Debtors and their estates and creditors clearly outweigh any potential costs. Under these circumstances, the Settlement and all of their terms should be approved.

### B. The Plaintiff Debtors' Entry into the Settlement Should be Approved Pursuant to Sections 363(b) and 105(a) of the Bankruptcy Code

13. Ample authority also exists for approval of the Settlement under sections 363(b) and 105(a)[5] of the Bankruptcy Code.

14. Section 363(b) provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363(b) of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to

---

[5] Section 105 of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

8

authorize the sale, disposition or other use of a debtor's assets, courts in the Eighth Circuit and others, in applying this section, have required that such an action be based upon the sound business judgment of the debtor. *See In re Farmland Indus. Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003) (approving an amendment to the debtors' post-petition financing credit agreement as an exercise of sound and reasonable business judgment); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 567 n.16 (8th Cir. 1997) ("[w]here the [debtor's] request is not manifestly unreasonable or made in bad faith, the court should normally grant approval 'as long as the proposed action appears to enhance the debtor's estate'" (citing *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985))); *In re Farmland Indus. Inc.*, 294 B.R. 903, 913 (Bankr. W.D. Mo. 2003) (approving the rejection of employment agreements and noting that "[u]nder the business judgment standard, the question is whether the [proposed action] is in the Debtors' best economic interests, based on the Debtors' best business judgment in those circumstances" (citations omitted)); *see also Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateauguay Corp.)*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063 (2d Cir. 1983) (same); *In re Chrysler LLC*, 405 B.R. 84 (Bankr. S.D.N.Y. 2009), *aff'd Ind. State Police Pension Trust v. Chrysler LLC (In re Chrysler LLC)*, 576 F.3d 108 (2d Cir. 2009) (same); *In re Gen. Motors Corp.*, 407 B.R. 463 (Bankr. S.D.N.Y. 2009) (same).

      15.     Moreover, a strong presumption attaches to a debtor's business decision that the debtor "acted on an informed basis, in good faith and in the honest belief that the

9

action taken was in the best interests of the company." *Official Comm. of Sub. Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1990) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11); *see also In re Pilgrim's Pride Corp.*, 401 B.R. 229, 237 (Bankr. N.D. Tex. 2009) ("[I]f a valid business reason is shown for the transaction, the transaction is presumed appropriate."). The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *Integrated Res., Inc.*, 147 B.R. at 656 (citations omitted). Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence. *Id.*

16. The Settlement clearly meets the requirements of section 363(b) of the Bankruptcy Code. For all of the reasons set forth above, the Plaintiff Debtors' decision to enter into the Settlement is in the best interests of the Plaintiff Debtors and all of their economic stakeholders. The decision plainly reflects the sound business judgment of the Plaintiff Debtors. The Settlement will result in a payment of $1,250,000 into the Plaintiff Debtors' estates and will avoid the expense and uncertainty of future litigation.

17. Accordingly, the Plaintiff Debtors submit that the Settlement should be approved under sections 363(b) and Bankruptcy Rule 9019(a), as a sound exercise of the Plaintiff Debtors' reasonable business judgment and as being in the best interest of the Plaintiff Debtors' estates and all parties in interest.

      **C.**     **The Sale of the Released Claims Free and Clear of any Interests of All Persons is Authorized Pursuant to Section 363 of the Bankruptcy Code**

18.    By this Motion, the Plaintiff Debtors are requesting approval of the sale to the ACE Companies of the Released Claims (as defined in the Settlement) free and clear of the interests, if any, held by any persons or entities. Insurance policies are property of a debtor's estate under section 541(a) of the Bankruptcy Code. *See In re Titan Energy, Inc.*, 837 F.2d 325, 328-29 (8th Cir.1988) (holding that insurance policies are property of debtor's estate "under the expansive definition set forth in section 541 of the Bankruptcy Code"); *OneBeacon Am. Ins. Co. v. A.P.I., Inc.*, 2006 U.S. Dist. LEXIS 34297 (D. Minn. 2006); *First Fid. Bank v. McAteer*, 985 F.2d 114, 116 (3d Cir. 1993). Accordingly, the Plaintiff Debtors' interests in the Released Claims may be sold subject to section 363(b)(1) of the Bankruptcy Code, which permits a debtor in possession to sell property of the estate outside the ordinary course of business with notice and a hearing.

19.    The Bankruptcy Court has authority to approve the sale of the Released Claims pursuant to the Settlement, provided that the sale (i) complies with the requirements of section 363(f) of the Bankruptcy Code and (ii) satisfies the requirement in section 363(e) of the Bankruptcy Code to provide sufficient protection for any holder of an interest in the property being sold.

20.    Section 363(f) of the Bankruptcy Code permits a debtor to sell assets free and clear of claims, liens and encumbrances held by an entity if (i) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (ii) such entity consents; (iii) such interest is a lien and the price at which such property to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in a

bona fide dispute; or (v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

21. Because section 363(f) is written in the disjunctive, satisfaction of any of the enumerated conditions will be sufficient to warrant the Plaintiff Debtors' sale of the Released Claims to the ACE Companies free and clear of all liens, claims and encumbrances. Here, one or more of the enumerated conditions are applicable to every entity that might assert an interest in the Released Claims. More specifically, the Plaintiff Debtors submit that (i) those holders of interests in the Released Claims who do not object or who withdraw their objections to the Motion should be deemed to have consented to the relief requested herein pursuant to section 363(f) of the Bankruptcy Code; and (ii) each holder of an interest in the Released Claims can be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interests as contemplated by section 363(f) of the Bankruptcy Code.

22. Accordingly, the Plaintiff Debtors request that the Bankruptcy Court authorize their entry into the Settlement, including the sale of the Released Claims by the Plaintiff Debtors to the ACE Companies free and clear of the interests, if any, held by any persons or entities.

### D. The ACE Companies are Good Faith Purchasers and Are Entitled to Protection Under Section 363(m) of the Bankruptcy Code

23. Under section 363(m) of the Bankruptcy Code, a good faith purchaser is one that purchases assets in good faith for value. *Badami v. Burgess (In re Burgess)*, 246 B.R. 352, 356 (8th Cir. B.A.P. 2000) (*citing Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992); *In re Abbotts Dairies of Penn, Inc.*, 788 F.2d 143 (3rd Cir. 1986)).

12

24. The Plaintiff Debtors submit that the Settlement was the result of arms' length negotiations and is entitled to the protections of section 363(m) of the Bankruptcy Code. The Parties have not engaged in any conduct that would (i) cause or permit the Settlement or the sale of the Released Claims to be avoided under section 363(n) of the Bankruptcy Code; (ii) cause or permit any amounts, costs, attorneys' fees, expenses or punitive damages to be recovered under section 363(n) of the Bankruptcy Code; or (iii) prevent the application of section 363(m) of the Bankruptcy Code. Therefore, the Plaintiff Debtors' sale of the Released Claims to the ACE Companies is not avoidable under section 363(n) of the Bankruptcy Code.

### Waiver of Bankruptcy Rules 6004(a) and (h)

25. To implement the foregoing immediately and to the extent applicable, the Plaintiff Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### No Prior Request

26. No prior motion for the relief requested herein has been made to this Court or any other court.

### Notice

27. Consistent with the Order Establishing Certain Notice, Case Management and Administrative Procedures entered on March 22, 2013 [ECF No. 3361] (the "**Case Management Order**") the Debtors will serve notice of this Motion on the Core Parties (as defined in the Case Management Order) and the ACE Companies. All parties who have requested electronic notice of filings in these cases through the Court's ECF system will automatically receive notice of this motion through the ECF system no later than the

day after its filing with the Court. A copy of this Motion and any order approving it will also be made available on the Debtors' Case Information Website (located at *www.patriotcaseinfo.com*). A copy of the Proposed Order is available at *www.patriotcaseinfo.com/orders.php* (the "**Patriot Orders Website**"). The Proposed Order may be modified or withdrawn at any time without further notice. If any significant modifications are made to the Proposed Order, an amended Proposed Order will be made available on the Patriot Orders Website, and no further notice will be provided. In light of the relief requested, the Debtors submit that no further notice is necessary. Pursuant to paragraph 14 of the Case Management Order, if no objections are timely filed and served in accordance therewith, the relief requested herein may be entered without a hearing.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that the Court enter an order granting the relief requested herein and such other and further relief as is just and proper.

Dated:   September 10, 2013
         New York, New York

        Respectfully submitted,

        DAVIS POLK & WARDWELL LLP

        */s/ Michelle M. McGreal*
        Marshall S. Huebner
        Brian M. Resnick
        Michelle M. McGreal
        450 Lexington Avenue
        New York, New York 10017
        Telephone: (212) 450-4000
        Facsimile:  (212) 607-7983

        *Counsel to the Debtors*
        *and Debtors in Possession*

        -and-

        BRYAN CAVE LLP
        Lloyd A. Palans, #22650MO
        Brian C. Walsh, #58091MO
        Laura Uberti Hughes, #60732MO
        One Metropolitan Square
        211 N. Broadway, Suite 3600
        St. Louis, Missouri 63102
        Telephone:  (314) 259-2000
        Facsimile:   (314) 259-2020

        *Local Counsel to the Debtors*
        *and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **In re** | Chapter 11 |
| | Case No. 12-51502-659 |
| **PATRIOT COAL CORPORATION**, *et al.*, | (Jointly Administered) |
| **Debtors.** | |

**SUMMARY OF EXHIBITS**

The following exhibit (the "**Exhibit**") referenced in the *Certain Debtors' Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 363(b) and 105(a) and Fed. R. Bankr. P. 9019(A) Approving the Settlement with ACE Companies* will be provided to the Core Parties and the ACE Companies. Copies of the Exhibit will also be made available at *www.patriotcaseinformation.com/exhibits.php* and will be made available for inspection at the hearing.

Exhibit A:        The Settlement

## SCHEDULE 1
(Debtor Entities)

1. Affinity Mining Company
2. Apogee Coal Company, LLC
3. Appalachia Mine Services, LLC
4. Beaver Dam Coal Company, LLC
5. Big Eagle, LLC
6. Big Eagle Rail, LLC
7. Black Stallion Coal Company, LLC
8. Black Walnut Coal Company
9. Bluegrass Mine Services, LLC
10. Brook Trout Coal, LLC
11. Catenary Coal Company, LLC
12. Central States Coal Reserves of Kentucky, LLC
13. Charles Coal Company, LLC
14. Cleaton Coal Company
15. Coal Clean LLC
16. Coal Properties, LLC
17. Coal Reserve Holding Limited Liability Company No. 2
18. Colony Bay Coal Company
19. Cook Mountain Coal Company, LLC
20. Corydon Resources LLC
21. Coventry Mining Services, LLC
22. Coyote Coal Company LLC
23. Cub Branch Coal Company LLC
24. Dakota LLC
25. Day LLC
26. Dixon Mining Company, LLC
27. Dodge Hill Holding JV, LLC
28. Dodge Hill Mining Company, LLC
29. Dodge Hill of Kentucky, LLC
30. EACC Camps, Inc.
31. Eastern Associated Coal, LLC
32. Eastern Coal Company, LLC
33. Eastern Royalty, LLC
34. Emerald Processing, L.L.C.
35. Gateway Eagle Coal Company, LLC
36. Grand Eagle Mining, LLC
37. Heritage Coal Company LLC
38. Highland Mining Company, LLC
39. Hillside Mining Company
40. Hobet Mining, LLC
41. Indian Hill Company LLC
42. Infinity Coal Sales, LLC
43. Interior Holdings, LLC
44. IO Coal LLC
45. Jarrell's Branch Coal Company
46. Jupiter Holdings LLC
47. Kanawha Eagle Coal, LLC
48. Kanawha River Ventures I, LLC
49. Kanawha River Ventures II, LLC
50. Kanawha River Ventures III, LLC
51. KE Ventures, LLC
52. Little Creek LLC
53. Logan Fork Coal Company
54. Magnum Coal Company LLC
55. Magnum Coal Sales LLC
56. Martinka Coal Company, LLC
57. Midland Trail Energy LLC
58. Midwest Coal Resources II, LLC
59. Mountain View Coal Company, LLC
60. New Trout Coal Holdings II, LLC
61. Newtown Energy, Inc.
62. North Page Coal Corp.
63. Ohio County Coal Company, LLC
64. Panther LLC
65. Patriot Beaver Dam Holdings, LLC
66. Patriot Coal Company, L.P.
67. Patriot Coal Corporation
68. Patriot Coal Sales LLC
69. Patriot Coal Services LLC
70. Patriot Leasing Company LLC
71. Patriot Midwest Holdings, LLC
72. Patriot Reserve Holdings, LLC
73. Patriot Trading LLC
74. PCX Enterprises, Inc.
75. Pine Ridge Coal Company, LLC
76. Pond Creek Land Resources, LLC
77. Pond Fork Processing LLC
78. Remington Holdings LLC
79. Remington II LLC
80. Remington LLC
81. Rivers Edge Mining, Inc.
82. Robin Land Company, LLC
83. Sentry Mining, LLC
84. Snowberry Land Company
85. Speed Mining LLC
86. Sterling Smokeless Coal Company, LLC
87. TC Sales Company, LLC
88. The Presidents Energy Company LLC
89. Thunderhill Coal LLC
90. Trout Coal Holdings, LLC
91. Union County Coal Co., LLC
92. Viper LLC
93. Weatherby Processing LLC
94. Wildcat Energy LLC
95. Wildcat, LLC
96. Will Scarlet Properties LLC
97. Winchester LLC
98. Winifrede Dock Limited Liability Company
99. Yankeetown Dock, LLC